UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BERNICE A.,

                 Plaintiff,

v.                                                                        5:19-CV-0688
                                                                          (ML)

ANDREW SAUL,
Commissioner of Social Security Administration,

                 Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

Legal Aid Society of Mid-New York, Inc.                    ELIZABETH V. KRUPAR, ESQ.
   Counsel for the Plaintiff
221 South Warren Street, Suite 310
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION                            CANDACE LAWRENCE, ESQ.
   Counsel for the Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## **ORDER**

Currently pending before the Court in this action, in which Plaintiff seeks judicial review

of an adverse administrative determination by the Commissioner of Social Security, pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral

argument was heard in connection with those motions on August 3, 2020, during a telephone

_____

[1]        This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c),
has been treated in accordance with the procedures set forth in General Order No. 18. Under that
General Order once issue has been joined, an action such as this is considered procedurally, as if
cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure.

conference conducted on the record.  At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by Plaintiff in this appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is

**ORDERED** as follows:

1)      The Commissioner's determination that Plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

2)      Defendant's motion for judgment on the pleadings (Dkt. No. 12) is GRANTED.

3)      Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is DENIED.

4)      The Clerk of Court is respectfully directed to enter judgment, based upon this determination, DISMISSING Plaintiff's Complaint in its entirety.

Dated: August 18, 2020
       Binghamton, New York

_Miroslav Lovric_

Miroslav Lovric
United States Magistrate Judge
Northern District of New York

2

```
1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF NEW YORK

3    ----------------------------------------------------------

4    BERNICE A.

5               -versus-                    19-CV-688

6    ANDREW M. SAUL, COMMISSIONER OF

7    SOCIAL SECURITY

8    ----------------------------------------------------------

9               TRANSCRIPT OF TELEPHONE CONFERENCE

10   held in and for the United States District Court, Northern

11   District of New York, at the Federal Building, 15 Henry

12   Street, Binghamton, New York, on August 3, 2020, before

13   the HON. MIROSLAV LOVRIC, United States Magistrate Judge,

14   PRESIDING.

15

16   APPEARANCES:

17   FOR THE PLAINTIFF:

18   LEGAL AID SOCIETY OF MID-NEW YORK, INC.

19   BY:  ELIZABETH V. KRUPAR, ESQ.

20        Syracuse, New York

21

22   FOR THE DEFENDANT:

23   SOCIAL SECURITY ADMINISTRATION

24   BY:  CANDANCE LAWRENCE, ESQ.

25        Boston, MA
```

Bernice A. vs Saul

1          THE COURT:  I'm going to turn now to the Decision

2    and the Order of the Court, so first I start out with a short

3    introduction.

4                This matter has been referred to me for all

5    proceedings and entry of a final judgment pursuant to the

6    Social Security Pilot Program here in the Northern District

7    of New York under General Order number 18 and in accordance

8    with the provisions of 28 USC Section 636(c) and also Federal

9    Rule of Civil Procedure 73 and also Northern District of New

10   York Local Rule 73.1, and then lastly by way of the consent

11   of the parties.

12               This action involves judicial review of an

13   adverse determination by the Commissioner of Social Security

14   pursuant to 42 United States Code Sections 405(g) and

15   1383(c).  In this appeal I have reviewed the following:  One,

16   the Social Security Administration Record and Transcript that

17   can be found at docket number 10.  Included in that docket

18   number 10 I reviewed the Administrative Law Judge's Hearing

19   Decision and the transcript of oral hearing.

20               In my decision when I do refer to any of the

21   Administrative Record, the Administrative Transcript, I will

22   use the letter T, T as in Thomas, to reference that.  So as

23   to the Law Judge's Hearing Decision and Transcript that can

24   be found at T. 7 through 26 and 30 to 51.

25               I also reviewed the plaintiff's brief at

1    docket number 11, the defendant's brief at docket number 12

2    and I generally also reviewed the other entries on the

3    docket.

4            Lastly, I have also taken into consideration

5    today's oral arguments from the parties in reaching and

6    rendering a decision in this matter.

7            The procedural history of the case is as

8    follows:  The plaintiff protectively filed for Disability

9    Insurance Benefits, also called DIB, and Supplemental

10   Security Income, known as SSI, for these benefits on

11   March 24, 2016 and alleging disability beginning on

12   December 31, 2015.  See docket number 10.

13           The applications were denied initially by

14   notice dated May 19, 2016, see T. 90 through 97.  On June 27,

15   2016 plaintiff requested a hearing before an Administrative

16   Law Judge.  See T. 98 through 99.  The video hearing was held

17   in front of an Administrative Law Judge, who I'll refer to as

18   ALJ, Mr. Stanley Chin, and that occurred on May 17 of 2018.

19   See T. 30 through 51.  Additionally, Carly Coughlin, a

20   Vocational Expert, who I will refer to as VE, also testified

21   at that hearing.

22           The ALJ utilized the five-step process for

23   evaluating disability claims, see T. 7 through 26, and found

24   that plaintiff was not disabled from her alleged onset date

25   through the date of the decision because, as the ALJ

Bernice A. vs Saul

1    indicated, she was capable of performing jobs that existed in

2    significant numbers in the national economy.  See T. 7

3    through 26.  See also 20 CFR Section 404.1520(a)(4), i

4    through v, describing the steps in the sequential evaluation.

5    See also 20 CFR Section 404.1566(b).  If the claimant can

6    perform work in the national economy, he is not disabled.

7            On June 8, 2018 the ALJ issued an unfavorable

8    decision.  See T. 7 through 26.  Plaintiff requested review

9    of the hearing decision before the appeals counsel on

10   July 30, 2018.  See T. 165 through 169.  On April 16, 2019

11   the appeals counsel denied the request for review.  See T. 1

12   through 6, after which time the Commissioner's determination

13   became final and this appeal followed.

14           I want to set forth the generally applicable

15   law and standards that apply in my review and in my reaching

16   a decision.  Under the first category of disability standard

17   to be considered disabled, a plaintiff seeking Disability

18   Insurance Benefits or SSI disability benefits must establish

19   that she is unable to engage in any substantial gainful

20   activity by reason of any medically determinable physical or

21   mental impairment which can be expected to result in death or

22   which has lasted or can be expected to last for a continuous

23   period of not less than 12 months.  See 42 USC Section

24   1382c(a)(3)(A).

25           In addition, the plaintiff's physical or

Bernice A. vs Saul

1   mental impairment or impairments must be of such severity

2   that he is not only unable to do his previous work but

3   cannot, considering his age, education and work experience

4   engage in any other kind of substantial gainful work which

5   exists in the national economy regardless of whether such

6   work exists in the immediate area in which he lives or

7   whether a specific job vacancy exists for him or whether he

8   would be hired if he applied for work.  See 42 United States

9   Code Section 1382c(A)(3)(B).

10          The Commissioner used a five-step process set

11  forth at 20 CFR Sections 404.1520 and 416.920 to evaluate

12  disability insurance and SSI disability claims.

13          First, the Commissioner considers whether the

14  claimant is currently engaged in substantial gainful

15  activity.  If he is not, the Commissioner next considers

16  whether the claimant has a severe impairment which

17  significantly limits his physical or mental ability to do

18  basic work activities.  If the claimant suffers from an

19  impairment the third inquiry is, whether based solely on

20  medical evidence, the claimant has an impairment which meets

21  or equals the criteria of an impairment listed in Appendix 1

22  of the regulations.  If the claimant has such an impairment,

23  the Commissioner will consider him disabled without

24  considering vocational factors such as age, education and

25  work experience.  Assuming the claimant does not have a

Bernice A. vs Saul

| | |
|---|---|
| 1 | listed impairment, the fourth inquiry is whether, despite the |
| 2 | claimant's severe impairment, he has the residual functional |
| 3 | capacity to perform his past work.  Finally, if the claimant |
| 4 | is unable to perform his past work, the Commissioner then |
| 5 | determines whether there's other work which the claimant can |
| 6 | perform.  See *Berry V Schweiker* at 675 F.2d 464 at 467, |
| 7 | Second Circuit 1982.  See also 20 CFR Sections 404.1520 and |
| 8 | 416.920. |
| 9 | The plaintiff has the burden of establishing |
| 10 | disability at the first four steps; however, if the plaintiff |
| 11 | establishes that her impairment prevents her from performing |
| 12 | her past work, the burden then shifts to the Commissioner to |
| 13 | prove the final step. |
| 14 | As for the scope of review.  In reviewing a |
| 15 | final decision of the Commissioner, a Court must determine |
| 16 | whether the correct legal standards were applied and whether |
| 17 | substantial evidence supported the decision.  See *Selian* |
| 18 | *versus Astrue* at 708 F.3d at 417.  Also see *Brault v Social* |
| 19 | *Security Administration Commissioner*, 683 F.3d 443 at 448, |
| 20 | Second Circuit 2012 and see also 42 United States Code |
| 21 | Section 405(g).  Substantial evidence is such relevant |
| 22 | evidence as a reasonable mind might accept as adequate to |
| 23 | support a conclusion.  See *Talavera versus Astrue*, 697 F.3d |
| 24 | 145 at 151, Second Circuit 2012.  It must be more than a |
| 25 | scintilla of evidence scattered throughout the administrative |

1    record.  However, this standard is a very deferential

2    standard of review, even more so than the clearly erroneous

3    standard.  See *Brault*, 683 F.3d at 448.

4              A reviewing court may not substitute it's

5    interpretation of the administrative record for that of the

6    Commissioner if the record contains substantial support for

7    the ALJ's decision.  See also *Rutherford v Schweiker*, 685

8    F.2d 60 at 62, Second Circuit 1982.  In reviewing a final

9    decision by the Commissioner under 42 United States Code

10   Section 405, the Court does not determine de novo whether a

11   plaintiff is disabled.  See 42 US Code Sections 405(g).  Also

12   1383(c)(3).  And see also *Wagner versus Secretary of Health*

13   *and Human Services*, 906 F.2d 856 at 860, Second Circuit 1990.

14   Rather, the Court must examine the Administrative Transcript

15   to ascertain whether the correct legal standards were applied

16   and whether the decision is supported by substantial

17   evidence.  See *Shaw versus Chater*, 221 F.3d 126 at 131,

18   Second Circuit 2000.  Also see *Schaal versus Apfel*, 134 F.3d

19   496 at 500 to 501, Second Circuit 1998.  Substantial evidence

20   is evidence that amounts to more than a mere scintilla and it

21   has been defined as such relevant evidence as a reasonable

22   mind might accept as adequate to support a conclusion.  See

23   *Richardson versus Perales*, 402 United States 389 at 401,

24   1971.  If supported by substantial evidence, the

25   Commissioner's factual determinations are conclusive and it

Bernice A. vs Saul

1  is not permitted for the courts to substitute their analysis

2  of the evidence.  See *Rutherford v Schweiker*, 685 F.2d 60 at

3  62, Second Circuit 1982.  In other words, this Court must

4  afford the Commissioner's determination considerable

5  deference, and may not substitute its own judgment for that

6  of the Commissioner, even if it might justifiably have

7  reached a different result upon a de novo review.  See

8  *Valente versus Secretary of Health and Human Services*, 733

9  F.2d 1037 at 1041, Second Circuit 1984.

10            An ALJ is not required to explicitly analyze

11  every piece of conflicting evidence in the record.  See

12  *Mongeur v Heckler*, 722 F.2d 1033 at 1040, Second Circuit 1983

13  case.  See also *Miles versus Harris*, 645 F.2d 122 at 124, a

14  Second Circuit 1981 case.  However, the ALJ cannot pick and

15  choose evidence in the record that supports his conclusions.

16  See *Cruz v Barnhart*, 343 F. Supp 2d 218 at 224, a Southern

17  District New York 2004 case.  See also *Fuller v Astrue*,

18  number 09-CV-6279.  It can be found at 2010 Westlaw, 5072112

19  at 6.  A Western District New York, December 6, 2010 case.

20            The following facts briefly indicate the

21  plaintiff's general background:  First, plaintiff was 51

22  years old on December 31, 2015, the date that she alleges she

23  became disabled because of arthritis, a slipped disc, a

24  shoulder injury, depression, and Posttraumatic Stress

25  Disorder.  See T. 170 and T. 203.

Bernice A. vs Saul

1          The record shows that she worked part-time or

2     full-time as a taxi driver until December of 2016.  See

3     T. 330, 395, 467, 485, 489, 528, 537 and 653.  And then

4     beginning in June of 2017 plaintiff worked as a full-time

5     personal home aid.  See T. 507 and 659.  By December of 2017,

6     however, she was reportedly not getting the work hours she

7     was previously, that she was previously obtaining, and

8     continued to work hard on getting more hours while looking

9     for another job.  See T. 661.

10          In May 2018 plaintiff testified that she was

11     working anywhere from 4 to 24 hours a week as a personal care

12     aid but the number of hours depended on if they gave her work

13     and it was supposed to be, according to the plaintiff, to be

14     40 hours.  See T. 37 through 38.  For additional facts, I

15     direct the parties to the ALJ's decision, that's found at

16     T. 7 through 26.  In reaching his decision, the ALJ set forth

17     in a report that's found in T. 7 through 26.

18          I summarize the ALJ's decision as follows:

19     The ALJ indicated, first, the claimant meets the insured

20     status requirements of the Social Security Act through

21     December 31 of 2020.

22          Next, the claimant has not engaged in

23     Substantial Gainful Activity, also known as SGA, since

24     December 31 of 2015, the alleged onset date.  See 26 CFR

25     404.1571, et seq. and also 416.971, et seq.

Bernice A. vs Saul

1          Next, the ALJ notes the claimant has the

2    following severe impairments:  Right shoulder impairment,

3    cervical spine impairment, bilateral foot impairments,

4    asthma, obstructive sleep apnea, obesity, Posttraumatic

5    Stress Disorder, and depressive disorder and for these severe

6    impairments see 20 CFR 404.1520(c) and 416.920(c).

7          Next, the ALJ notes the claimant does not have

8    an impairment or combination of impairments that meets or

9    medically equals the severity of one of the listed

10   impairments in 20 CFR Part 404, Subpart P, Appendix 1.  See

11   20 CFR 404.1520(d).  See also 404.1525.  Additionally see

12   404.1526.  Also see 416.920(d).  Also, 416.925 and lastly see

13   416.926.

14         The ALJ notes, after careful consideration of

15   the entire record, the ALJ concluded that the claimant has

16   the residual functional capacity to perform light work as

17   defined in 20 CFR 404.1567(b) and 416.967(b), except she can

18   occasionally climb ladders, ropes and scaffolds.  She can

19   occasionally reach overhead with the right upper extremity.

20   She must occasionally avoid exposure to environmental

21   irritants, such as fumes, odors, dust, gases and poorly

22   ventilated areas and she is limited to short and simple

23   instructions and tasks in a routine work setting.

24         The ALJ further noted the claimant is unable,

25   that being not able to, perform any past relevant work.  See

Bernice A. vs Saul

1   20 CFR 404.1565 and 416.965.

2           The claimant was 51 years old which is defined

3   as an individual closely approaching advanced age on the

4   alleged disability onset date.  See 20 CFR 404.1563 and

5   416.963.

6           The ALJ went on to say the claimant has a

7   limited education and is able to communicate in English.  See

8   20 CFR 404.1564 and 416.964.

9           Next, the ALJ indicated transferability of job

10  skills is not material to the determination of disability

11  because using the Medical-Vocational Rules as a framework

12  supports a finding that the claimant is not disabled whether

13  or not the claimant has transferable job skills.  See SSR

14  82-41 and 20 CFR Part 404, Subpart P, Appendix 2.

15          The ALJ went on further to state, considering

16  the claimant's age, education, work experience and residual

17  functional capacity there are jobs that exist in significant

18  numbers in the national economy that the claimant can

19  perform.  See 20 CFR 404.1569.  Also 404.1569(a).  Further,

20  416.969 and lastly 416.969(a).

21          The ALJ noted the claimant has not been under

22  a disability, as defined in the Social Security Act, from

23  December 31, 2015 through the date of this decision.  See 20

24  CFR 404.1520(g) and 416.920(g).

25          And then lastly, the ALJ's decision and

Bernice A. vs Saul

1    conclusion states that:  Based on the application for a

2    period of disability and Disability Insurance Benefits

3    protectively filed on March 24, 2016, the ALJ concluded the

4    claimant is not disabled under Sections 216(i) and 223(d) of

5    the Social Security Act.  Based on the application for

6    Supplemental Security Income, which was protectively filed on

7    March 24, 2016, the claimant is not disabled under Section

8    1614(a)(3)(A) of the Social Security Act.

9              In reviewing the record and the plaintiff's

10   and defendant's briefs, I find that there are three essential

11   issues in contention:  First, whether the ALJ properly

12   weighed the medical evidence, specifically the opinion of

13   Dr. Saponara; second, whether the ALJ properly assessed

14   plaintiff's subjective symptoms; and third, and last, whether

15   substantial evidence supports the ALJ's step five finding.

16             My analysis and discussion on these three

17   areas of contention is as follows:  As to the first issue,

18   whether the ALJ properly weighed the medical evidence,

19   specifically, the opinion of Dr. Saponara.  I find that the

20   ALJ did properly weigh the opinion of Dr. Saponara.  While

21   the ALJ failed to explicitly apply the Burgess factors when

22   assigning the weight to Dr. Saponara, for the reasons stated

23   in defendant's memorandum of law, I find that the ALJ did not

24   err.

25             More specifically, the ALJ gave a

Bernice A. vs Saul

1  well-articulated rationale for giving only partial weight to

2  Dr. Saponara's opinion.  See T. 7 through 26, because it was

3  based on a treating relationship.  See T. 19.  The ALJ

4  adopted the 20-pound limit for occasional lifting and

5  carrying but rejected the remaining limitations.  See T. 15

6  and 19.  The ALJ explained that Dr. Saponara's opinion is not

7  entirely consistent with the record as a whole.  See T. 19.

8  For example, the limitation on use of foot controls is not

9  consistent with the claimant's reports in May 2016 that she

10 was working 19 hours a week as a driver.  See T. 327.

11 Additionally, physical therapy notes from July 2016 noted

12 improvement in walking, standing, and climbing stairs and an

13 examination in October 2016 showed normal ambulation.  See

14 T. 468 and 571.  See also *Anselm versus Commissioner of*

15 *Social Security* at 737 F Appendix 552 at 555, Second Circuit

16 2018.  The ALJ may set aside an opinion of a treating

17 physician that is contradicted by the weight of other record

18 evidence.  Although the ALJ did not make specific reference

19 to Burgess factors, the ALJ recited Dr. Saponara's

20 specialization as a DPM, and also the ALJ noted the

21 frequency, length, nature and extent of treatment, through a

22 detailed recitation of the medical care plaintiff was

23 afforded by him.  See T. at 18.  The ALJ detailed recitation

24 of medical care plaintiff was afforded.  In his analysis the

25 ALJ addressed Dr. Saponara's treating relationship with

Bernice A. vs Saul

1    plaintiff as a factor in affording his opinion partial weight

2    and identified the medical records, including physical

3    therapy records, that were inconsistent with Dr. Saponara's

4    medical opinion.  See T. 19, T. 327 through 333, also 468 and

5    lastly T. 571.

6              Additionally, a searching review of the record

7    by this Court assures the Court that the substance of the

8    treating physician rule was not traversed.  The ALJ's

9    decision was therefore also consistent in this way with the

10   Second Circuit's recent holding in *Estrella versus Berryhill*,

11   925 F.3d 90, Second Circuit 2019.

12             Addressing the factors of standing and walking

13   limitations.  The ALJ I find did not adopt Dr. Saponara's

14   opinion that plaintiff could only stand for up to three hours

15   and walk for up to two hours during a workday because it was

16   inconsistent with the record as a whole, including

17   plaintiff's physical therapy notes from July 2016 and the

18   findings from an October 2016 examination.  See again T. 19,

19   468 and 571.  The ALJ explained that despite plaintiff's

20   history of foot pain due to multiple impairments, including

21   osteoarthritis, pes planus, also known as flat feet, and

22   planter fascitis, the treatment records show improvement with

23   conservative care, including orthotics and physical therapy.

24   See T. at 17.  In addition, multiple examinations have shown

25   normal ambulation.  Also see T. at 17.  Plaintiff's testimony

Bernice A. vs Saul

1   in May 2018 also made clear that her foot pain was largely

2   alleviated by her orthotics and shoes.  See T. at 42.

3              Turning to the issue of foot controls.  The

4   ALJ also declined to adopt Dr. Saponara's restriction on the

5   use of foot controls because it was not supported by the

6   record.  See T. at 16.  It is unnecessary for the Court to

7   reach the question since none of the jobs identified by the

8   Vocational Expert, that being agricultural sorter; second,

9   sandwich-board carrier; or third, housekeeper, require the

10   use of foot controls.  In other words, none of these jobs

11   identified require any foot controls.  The Court notes that

12   any error by the ALJ related to the disputed limitations for

13   foot controls is harmless to the extent these limitations did

14   not impact plaintiff's ability to perform jobs identified by

15   the Vocational Expert and the ALJ.

16              Turning next to the postural and environmental

17   limitations.  The ALJ also did not adopt Dr. Saponara's

18   restrictions on climbing stairs, balance, stoop, kneel,

19   crouch or crawl and occasionally be exposed to extreme cold

20   or height or vibrations or unprotected heights and moving

21   mechanical parts and occasionally operate a vehicle.  Because

22   none of the jobs identified by the ALJ require any of those

23   functions that I just mentioned and the disability

24   determination would not have changed, the error, if it is an

25   error, is harmless to the extent these limitations did not

Bernice A. vs Saul

1   impact plaintiff's ability to perform jobs identified by the

2   Vocational Expert and the ALJ.

3               I turn next to the second issue of contention,

4   whether the ALJ properly assessed plaintiff's subjective

5   symptoms.  I find that the ALJ did properly assess

6   plaintiff's testimony.  The ALJ found that plaintiff's

7   statements concerning the intensity, persistence and limiting

8   effects of her symptoms were not entirely consistent with the

9   medical evidence and other evidence in the record.  See T.

10  at 16.

11              The ALJ stated, in general, examinations and

12  aging have shown few significant abnormalities.

13  Additionally, treatment has been primarily routine and

14  conservative and the claimant has reported some improvements

15  with treatment.  Furthermore the ALJ notes, the claimant's

16  reported activities are not limited to the extent that would

17  be expected to give her complaints of disabling symptoms and

18  limitations.  For example, she has been able to maintain

19  part-time jobs, initially as a taxicab driver and later as a

20  personal care attendant, throughout much of the relevant

21  period.

22              The ALJ here did address and consider several

23  of these factors.  And, in any event, the Court was able to

24  glean the rationale of the ALJ's decision.  Therefore, based

25  on what I just indicated and the fact that the Court finds

1    defendant's arguments persuasive on this point, I find that

2    the ALJ did properly assess the plaintiff's testimony.

3              The third area of contention is whether

4    substantial evidence supports the ALJ's step five finding.

5    At step five of the disability analysis the burden shifts to

6    the ALJ to demonstrate that there is other work in the

7    national economy that plaintiff can perform.  See *Poupore*

8    *versus Astrue*, 566 F.3d 303 at 306, Second Circuit 2009 case.

9    If the ALJ utilizes a Vocational Expert at the hearing, the

10   VE is generally questioned using a hypothetical question that

11   incorporates plaintiff's limitations.  See *Aubeuf versus*

12   *Schweiker*, 649 F.2d 107 at 114, Second Circuit 1981.  The ALJ

13   may rely on the VE's testimony regarding the availability of

14   work as long as the hypothetical facts the expert is asked to

15   consider are based on substantial evidence and accurately

16   reflect the plaintiff's limitations.  See *Calabrese versus*

17   *Astrue*, 385 F. Appendix 274 at 276, Second Circuit 2009.

18   Where the hypothetical is based on an RFC analysis supported

19   by substantial facts, the hypothetical is proper.  See

20   *Calabrese* at 276 to 277.

21             At step five, the ALJ had to demonstrate that

22   plaintiff was capable of performing jobs that existed in

23   significant numbers in the national economy.  See 20 CFR

24   Section 404.1520(a)(4)(v).

25             In his hypothetical question to the VE, the

Bernice A. vs Saul

1   ALJ described an individual who, among other things, was

2   restricted to using her right arm for overhead reaching on an

3   occasional basis.  See T. 47 through 48.  In response, the

4   expert identified three jobs that such an individual could

5   perform.  First job, sorter.  Second job, agricultural

6   products and third job, sandwich-board carrier -- excuse me.

7   Let me do that again.  The first job is sorter in

8   agricultural products.  The second job is sandwich-board

9   carrier and the third job is housekeeper.  See T. at 48.

10  Although the DOT does not specifically address overhead

11  reaching, it does address reaching which is broadly defined

12  as extending hands and arms in any direction.

13          The ALJ failed to resolve a conflict with

14  respect to one of the jobs identified by the expert.  The

15  remaining two jobs were conflict free.  Consistent with the

16  ALJ's hypothetical question, the sorter and sandwich-board

17  carrier both require occasional reaching.  However, the

18  housekeeper job requires frequent reaching.  The two jobs,

19  that being the sorter and sandwich-board carrier, were enough

20  to satisfy the Commissioner's burden of demonstrating that a

21  significant number of jobs exist in the national economy that

22  plaintiff can still perform.  The Vocational Expert testified

23  that there are a total of 81,000 jobs nationally, that being

24  38,000 sorter jobs and 43,000 sandwich-board carrier jobs.

25          Although the ALJ erred in failing to seek an

Bernice A. vs Saul

1   explanation for the discrepancy between the VE testimony and

2   the DOT, I find that error is harmless in this case for the

3   reasons that I just stated.

4              Wherefore, based on the findings as set forth

5   herein on the record, the ALJ's decision was supported by

6   substantial evidence and, therefore, it is ordered that the

7   Commissioner's decision is affirmed and plaintiff's complaint

8   is hereby dismissed.  And it is ordered that judgment be

9   entered for the defendant.

10             All right.  That constitutes the Court's

11  decision.  As I indicated I will issue a short order and I

12  will attach in the docket the transcript of my Decision and

13  Order that I just delivered on the record.

14             Miss Krupar, is there anything else today?

15             MS. KRUPAR:  No, your Honor.  Thank you for your

16  time.

17             THE COURT:  Okay.  Ms. Lawrence?

18             MS. LAWRENCE:  No.  Thank you very much, your

19  Honor.

20             THE COURT:  All right.  Thank you both.  And have a

21  great rest of the week and thank you very much again for good

22  arguments and good briefs.

23             Court stands adjourned.  Thank you.

24             (Court stands adjourned)

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5            I, VICKY A. THELEMAN, Federal Official

 6    Realtime Court Reporter, in and for the United

 7    States District Court for the Northern District of

 8    New York, do hereby certify that pursuant to Section

 9    753, Title 28 United States Code that the foregoing

10    is a true and correct transcript of the

11    stenographically reported proceedings held in the

12    above-entitled matter and that the transcript page

13    format is in conformance with the regulations of the

14    Judicial Conference of the United States.

15

16

17                           /s/ Vicky A. Theleman

18                      VICKY A. THELEMAN, RPR, CRR

19                      US District Court - NDNY

20

21

22    Dated:  August 6, 2020.

23

24

25
```